**FRED KRAUS & SONS, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 72 H 122.**

United States District Court,
N. D. Indiana,
Hammond Division.

Feb. 11, 1974.

Charles Levin, Hammond, Ind., Marshall J. Goldsmith, East Chicago, Ind., for plaintiff.

William C. Lee, U. S. Atty., Hammond, Ind., for defendant.

## ORDER

SHARP, District Judge.

The Court now grants the cross-motion for summary judgment filed herein on December 27, 1973 by the defendant, United States of America, and denies the motion for summary judgment filed by the plaintiff, Fred Kraus & Sons, Inc., on August 29, 1973.

## MEMORANDUM

This is a civil action brought by Fred Kraus & Sons, Inc., pursuant to 26 U.S. C. § 7426, challenging the seizure and sale by the Internal Revenue Service of certain fixtures and equipment. The fixtures and equipment were purchased from the plaintiff by Betty McGrigry on November 12, 1968.

Betty McGrigry became indebted to the United States for income and employment taxes in the amount of $3,051.-60 on September 22, 1971. On the above date federal tax liens were filed with the Recorder of Porter County, Indiana, that being the county where McGrigry resides. Federal tax liens were again filed on September 30, 1971 against Betty McGrigry for additional taxes of $3,460.76.

Subsequent to the filing of the first federal tax lien but prior to the filing of the second federal tax lien, plaintiff Kraus & Sons filed a financing statement dated September 24, 1971 with the Recorder of Porter County. Said financing statement was for the sum of $8,356.50 and represented the unpaid balance of an amount due and owing on a retail installment contract entered into on November 12, 1968 between Betty McGrigry and the plaintiff.

On October 6, 1971 a Notice of Seizure was served on Betty McGrigry for delinquent taxes in the amount of $6,455.82. After notice of sale the equipment and fixtures were sold at a public auction in November of 1971.

Kraus & Sons filed its complaint on May 25, 1972 seeking a judgment of $6,665.24 plus interest alleging that the seizure of the subject property was illegal and void in violation of plaintiff's interest.

On February 28, 1973 this Court (Beamer, C. J.) entered an order determining that it had jurisdiction over the subject matter of this action and denied the defendant's motion to dismiss. Thereafter, the plaintiff filed a motion for summary judgment and the defendant filed a cross-motion for summary judgment. There are no disputes as to the material facts involved in the case, and the court finds that this matter is ripe for decision by means of summary judgment. Further facts will be stated below. This court has also heard oral argument on the motion for summary judgment.

The lien that the defendant seeks to assert here is provided for by 26 U.S.C. § 6321:

"(A) If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in ad-

dition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal belonging to such person."

The section 6321 lien is a secret lien which arises and is effective from the date of the assessment of the tax. The priority of the section 6321 liens as against liens created by state law is governed by the common law rule that the "first in time is the first in right". United States v. Trigg (8 Cir. 1972), 465 F.2d 1264; Latipac, Inc. v. General Tire & Rubber Co. (D.C.Cal.1971), 347 F.Supp. 1043; United States v. Com. of Pa., Dept. of Highways (D.C.Pa.1972), 349 F.Supp. 1370, and T. H. Rogers Lumber Co. v. Apel (10 Cir. 1972), 468 F.2d 14.

A State created lien will be deemed first in time so as to defeat a later arising federal lien only when it is perfected in the federal sense that there is nothing more which remains to be done to have a "choate" lien; when the identity of the lienor, the property subject to the lien and the amount of the lien are established. United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). Thus, a section 6321 lien is entitled to priority over all other liens against the property which had not attached to the property and become choate prior to the time the federal lien arose. General Telephone Co. v. American Cas Co., 226 F.Supp. 929, 931 (S.D.Ill.1964).

This priority of the section 6321 lien is mitigated by 26 U.S.C. § 6323 which requires filing of the government lien to achieve priority against certain classes of creditors and protects certain creditors even after filing. Thus, for those classes of persons not protected by section 6323, the test of choateness is applied at the time of assessment, while it is applied as of the date the tax lien is filed for those that are protected. United States v. Truss Tite, Inc., 285 F.

Supp. 88, 91 (S.D.Texas 1968). Section 6323 provides that:

"(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate."

The plaintiff purports to be a member of that class of creditors which is protected by section 6323, as he purports to be the holder of a security interest in the property that was levied against. The question then is, does plaintiff meet the requirements of section 6323. First, the court looks to the definition of security interest as provided in section 6323(h), which reads as follows:

"(1) Security Interest.—The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

■■ As to the first tax lien filed, the plaintiff does not meet the requirement of Section 6323. The plaintiff does not seriously press an argument that his lien is in any way prior to the first filed federal tax lien. The priority of a federal tax lien vis à vis a lien created by state law is always a federal question to be determined finally by the federal courts, United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1954). Section 6323(h) provides the test of the security interest to determine if it is entitled to the protection pro-

vided. Here the plaintiff's lien meets all of the test, except, plaintiff's interest was not protected under local law against a subsequent judgment lien arising out of an unsecured obligation. This result follows, because filing of the lien is necessary for protection against a subsequent judgment lienor without notice. Burns 19–9–401, IC 1971, 26–1–9–401 provides in pertinent part:

"19–9–401. Place of filing—Erroneous filing—Removal of collateral—(1) The proper place to file in order to perfect a security interest is as follows:

\* \* \* \* \* \*

(c) in all other cases, the office of the secretary of state."

As for the status of the plaintiff's lien vis à vis the federal tax lien filed on September 30, 1971 some further facts become necessary. In an affidavit that accompanied the plaintiff's motion for summary judgment, it was asserted that the plaintiff gave actual notice on or about October 5, 1971 to a representative of the IRS that the plaintiff held a security interest in the property in question. The plaintiff therefore asserts that the government had actual knowledge of the existence of the security interest. Under certain circumstances relied upon by the plaintiff a judgment lien creditor is subordinated by an unperfected security interest if the lien creditor had knowledge of the existence of the security interest. Ind.Ann.Stat. 19–9–301(1)(d) (Burns 1964), I.C.1971, 26–1–9–301(1)(d) Appendix, *infra*, or knowledge of the contents of an improperly filed financing statement, Ind.Ann. Stat. 19–9–401(2) (Burns 1964), Appendix, *infra*. The court notes that the knowledge that the plaintiff imputes to the government accrued after the filing of the second government lien, and while this may be sufficient to render the plaintiff's theory moot, this court will not decide the matter on this point.

Mr. Justice Minton in the case of United States v. Security Trust & Savings, 340 U.S. 47, at page 49, 71 S.Ct.

111, at page 113, 95 L.Ed. 53 (1950), states:

" . . . Although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination . . ."

This court is of the opinion that even though the plaintiff's lien would have been entitled to priority against a party who had notice of its existence, or its contents, this is only sufficient for state purposes. The federal test to be applied to determine the existence of a security interest sufficient to claim protection under Section 6323 must be met. Section 6323(h) does not make the priority of the federal lien depend on whether a judgment lien did, in fact, exist which had priority over a security interest. Rather, the statute prescribes the degree to which a security interest must be perfected, i.e., sufficient action must have been taken by the secured party to perfect his security interest as to all hypothetical judgment lien creditors.

The plaintiff's interest was not perfected under the laws of the state of Indiana as against a subsequent judgment lien arising out of an unsecured obligation and therefore cannot be construed as a "security interest". If the interest of the plaintiff is not a "security interest", the plaintiff cannot be deemed a "holder of a security interest" and therefore will not be entitled to the protection that is afforded this type of interest in property by Section 6323. Absent this protection the lien of the plaintiff is not entitled to priority over the federal tax lien that was filed subsequent to the plaintiff's lien.

For all of the above and foregoing reasons, the court now grants the cross-motion of the defendant, United States of America.

## APPENDIX

**19–9–301. Persons who take priority over unperfected security interests — "Lien creditor."**—(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

(a) persons entitled to priority under section [19–]9–312;

(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected;

(c) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;

(d) in the case of accounts, contract rights, and general intangibles, a person who is not a secured party and who is a transferee to the extent that he gives value without knowledge of the security interest and before it is perfected.

(2) If the secured party files with respect to a purchase money security interest before or within ten [10] days after the collateral comes into possession of the debtor, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest. Acts 1963, ch. 317, § 9–301, p. 539.

**19–9–401. Place of filing—Erroneous filing—Removal of collateral.** —(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the county recorder in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the county recorder in the county where the goods are kept, or if the debtor is a corporation then in the office of the county recorder in the county where the principal place of business of the corporation is located, and in the office of the secretary of state, and in addition when the collateral is crops in the office of the county recorder in the county where the land on which the crops are growing or to be grown is located;

(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) in all other cases, in the office of the secretary of state.

(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article [Chapter] and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

(3) A filing which is made in the proper place in this state continues effective even though the debtor's residence or place of business or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed.

(4) If collateral is brought into this state from another jurisdiction, the rules stated in section [19–]9–103 determine whether filing is necessary in this state. [Acts 1963, ch. 317, § 9–401, p. 539.]